## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ABIGAIL STARR, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MOWI ASA; MOWI USA, LLC; and MOWI DUCKTRAP, LLC, <br><br> Defendants. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff ABIGAIL STARR ("Plaintiff" or "Starr"), a resident of Brooklyn, New York, individually and on behalf of other similarly situated individuals, by and through her counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendant MOWI ASA and its wholly owned subsidiaries MOWI USA, LLC and MOWI DUCKTRAP, LLC (collectively, "Defendants" or "Mowi") regarding the false and deceptive marketing and sale of Mowi's smoked Atlantic salmon products labeled as "sustainably sourced" when the products are produced using unsustainable industrial farming practices. Plaintiff alleges the following based upon information, belief, and the investigation of her counsel:

### INTRODUCTION

1.      Industrial salmon farming poses grave risks to the environment, animal welfare, and public health. At industrial salmon farms, salmon are confined in overcrowded and unsanitary marine pens that can contain more than 70,000 fishes at a time. These high-density conditions not only inflict extreme stress on the salmon, but also lead to the development of ecologically

{40892.1}                                                    1

dangerous diseases and parasite infestations. Because the marine pens are connected directly to the ocean environment, outbreaks can endanger surrounding ecosystems.

2.     These crowded and disease-ridden conditions cause industrial salmon farms to use large amounts of pesticides and antibiotics. This can contribute to the emergence of antimicrobial resistance in bacteria that may be transferred to humans. According to the Centers for Disease Control ("CDC"), "[a]ntibiotic resistance—the ability of germs to defeat the drugs designed to kill them—is one of the greatest global public health challenges of our time."[1] More than 2.8 million antibiotic-resistant infections occur in the United States each year, and more than 35,000 people die as a result.[2] In 2019, the World Health Organization ("WHO") characterized antibiotic resistance as "one of the most urgent health risks of our time" and as an "invisible pandemic," with the emergence of infections that are untreatable by all classes of antibiotics.[3]

3.     Consumers are growing increasingly concerned over the sustainability of their food products. In particular, consumers are concerned about the harmful impacts of industrial fish farming. Because of these concerns, consumers increasingly and consciously seek out fish products made from fish that are sourced in accordance with high environmental and animal welfare standards.

---

[1] Centers for Disease Control, *Antibiotic Resistance Threats in the United States, 2019*, at 3 (Dec. 2019), https://www.cdc.gov/drugresistance/pdf/threats-report/2019-ar-threats-report-508.pdf.

[2] *Id.* at vii.

[3] World Health Organization, *In the Face of Slow Progress, WHO Offers a New Tool and Sets a Target to Accelerate Action Against Antimicrobial Resistance* (June 18, 2019), https://www.who.int/news-room/detail/18-06-2019-in-the-face-of-slow-progress-who-offers-a-new-tool-and-sets-a-target-to-accelerate-action-against-antimicrobial-resistance.

4.      Mowi is the world's largest producer of farmed salmon.[4] Mowi employs over 14,000 people and offers its products in approximately 70 countries.[5] In 2019, Mowi's revenue was over 4.1 billion euros.[6]

5.      Mowi knows that consumers seek out and wish to buy fish products that are sustainably sourced. Mowi also knows that consumers will pay more for such products than they will pay for products made from fish that are not sourced sustainably.

6.      One of Mowi's product lines is smoked salmon, which Mowi markets under the brand name Ducktrap River of Maine ("Ducktrap").[7] To capture the growing market of consumers who wish to buy sustainably sourced fish products, Mowi includes the claim "sustainably sourced"[8] on the back of the retail packaging of some Ducktrap smoked Atlantic salmon products (the "Products"[9]). An example of the Product packaging is shown below.

---

[4]    Mowi, *Integrated Annual Report 2019*, at 2, https://corpsite.azureedge.net/corpsite/wp-content/uploads/2020/03/Mowi_Annual_Report_2019.pdf.

[5] *Id.*

[6] *Id.* at 8.

[7] *Healthy and Delicious Seafood*, Mowi, https://mowi.com/products/ (last visited Dec. 30, 2020); Ducktrap River of Maine, http://ducktrap.com/ (last visited Dec. 30, 2020); *Smoked Salmon*, Ducktrap River of Maine, http://ducktrap.com/products/smoked-salmon/ (last visited Dec. 30, 2020).

[8] Discovery may reveal that additional representations should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such representations.

[9] Discovery may reveal that additional Ducktrap products should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such products.






7.      Reasonable consumers who see the "sustainably sourced" claim would expect that the Products are made from fish that are sourced in accordance with high environmental and animal welfare standards.

8.      In reality, the Products are made from salmon industrially farmed at Mowi's facilities using unsustainable practices that are environmentally destructive and inhumane. As

recently as August of 2020, the Chilean government determined that Mowi's salmon farming facilities have caused "irreparable environmental damage" to the Chilean marine ecosystem.[10] Mowi has reported numerous dangerous disease outbreaks from its industrial fish farms, as well as massive "die-off" events where several hundred thousand salmon are killed by algae blooms, poor health, and disease. Mowi's audit documents show that it treats its salmon with antibiotics sulfadimethoxine and florfenicol—the latter of which is considered "highly important" for human medicine. Mowi's standard business practices inflict unnecessary suffering on its salmon, and its facilities have been rated by animal charities as some of the industry's worst due to mortality rates, parasite infestations, stress levels, and overstocking. Thus, Mowi's marketing of the Products as "sustainably sourced" is false, deceptive, and misleading.

9.      Consumers lack the information necessary to determine whether the Products are in fact "sustainably sourced" and to know or ascertain the true nature and sourcing of the Products. Reasonable consumers must therefore rely on Mowi's "sustainably sourced" representation.

10.     Mowi intended for consumers to rely on its "sustainably sourced" representation, and reasonable consumers did in fact rely on this representation. By deceiving consumers about the nature and sourcing of the Products, Mowi is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profits.

11.     During any applicable statute of limitations period, Plaintiff and Class Members (described below) saw Mowi's "sustainably sourced" representation when purchasing the Products in New York and throughout the United States. Based upon this misrepresentation, Plaintiff and

---

[10] Christian Molinari, *Mowi Chile Hit with US 6.7 Million Fine over 2018 Salmon Escape*, SeafoodSource (Aug. 24, 2020), https://www.seafoodsource.com/news/aquaculture/mowi-chile-hit-with-usd-7-million-fine-from-2018-salmon-escape (emphasis added).

Class Members paid more for the Products than they otherwise would have paid, purchased the Products when they otherwise would not have, or purchased more of the Products than they otherwise would have, had they known the truth about Mowi's unsustainable industrial farming practices. As a result, Plaintiff and Class Members suffered injury.

12.     Mowi's false and deceptive representations violate the consumer protection statutes of New York, the consumer protection statutes of all states where the Products are sold, and common law.

13.     Because Mowi's "sustainably sourced" representation is false, deceptive, and misleading, Plaintiff brings this case on behalf of a class of consumers who purchased the Products (including a subclass who purchased the Products in New York) and seeks relief including damages, interest, costs, and reasonable attorneys' fees. Plaintiff also seeks declaratory and injunctive relief in the form of an order declaring that Mowi's deceptive marketing of the Products is unlawful and enjoining such deceptive marketing. Even today, proposed Class Members are purchasing the unlawfully marketed Products, and will continue to do so unless Mowi's deceptive marketing is enjoined.

## JURISDICTION AND VENUE

14.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act. Plaintiff Starr is a citizen of New York. There are at least 100 members in the proposed plaintiff class, including citizens in each state of the United States and the District of Columbia.

15.     On information and belief, Defendant Mowi ASA is a citizen of Norway; Defendant Mowi USA, LLC is a citizen of the State of Florida; and Defendant Mowi Ducktrap, LLC is a citizen of the State of Maine.

16.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

17.     This Court has personal jurisdiction over the Defendants. Defendant Mowi Ducktrap, LLC is a citizen of the State of Maine with a principal place of business in Maine. The Defendants purposefully avail themselves of the laws of Maine, market their Products to consumers in Maine, and distribute their Products to numerous retailers throughout the United States, including in Maine.

18.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(b). Substantial acts in furtherance of the alleged improper conduct, including the creation and/or authorization of false and deceptive labeling and marketing of the Products, as well as the dissemination of deceptive labeling and sales of the Products at issue, occurred within this District. Defendant Mowi Ducktrap, LLC is a citizen of Maine with a principal place of business in Maine.

## PARTIES

19.     Defendant Mowi ASA is a Norwegian seafood company with a principal place of business in Bergen, Norway.

20.     Mowi USA, LLC is a Florida limited liability company with a principal place of business in Florida. It is a wholly owned subsidiary of Mowi ASA.

21.     Mowi Ducktrap, LLC is a Maine limited liability company with a principal place of business in Maine. It is a wholly owned subsidiary of Mowi ASA.

22.     Collectively, Defendants produce, advertise, market, and distribute the Products throughout the United States. Defendants created and/or authorized the false and deceptive labeling and marketing of the Products.

23.     Plaintiff Abigail Starr is a citizen of the State of New York and a resident of Brooklyn, New York. At all times mentioned herein, Starr was and is an individual consumer over the age of 18.

24.     On August 14, 2020, Plaintiff Starr sent a letter via email to Defendants detailing the claims and allegations set forth in this Complaint. Defendants acknowledged receipt of this letter on August 19, 2020 and subsequently declined to provide the requested relief.

25.     Within the Class Period (as defined below), Starr purchased Mowi's Ducktrap-brand Smoked Atlantic Salmon product, which was labeled "sustainably sourced," in the New York City area.

26.     In making her purchases, Starr saw, reasonably believed, and relied upon Mowi's "sustainably sourced" representations on the Product packaging. An example of the Product packaging that Starr saw and relied upon is provided *supra* ¶ 6.

27.     Starr was willing to pay the requested price for Mowi's Products because she reasonably expected that the Products were sustainably sourced in accordance with high environmental and animal welfare standards.

28.     Had Starr known that the Products were made from salmon industrially farmed at Mowi's facilities using unsustainable practices, she would not have purchased or continued to purchase the Products. Starr ceased purchasing the Products because Mowi was labeling the Products "sustainably sourced" when they are made from salmon industrially farmed using unsustainable practices.

29.     Starr continues to purchase salmon products and intends to continue purchasing salmon products in the future, but she does not currently purchase the Products.

30.     Starr wishes to be able to continue purchasing Mowi's Products, and thus wishes to see the Products truthfully made with fish that are sustainably sourced in accordance with high environmental and animal welfare standards. Moreover, Starr is aware that proposed Class Members are currently purchasing, and will continue to purchase, the Products, unaware that the "sustainably sourced" representation is false and deceptive, unless Mowi's conduct is enjoined.

## FACT ALLEGATIONS

I.     **Mowi Markets the Products as "Sustainably Sourced," Which Suggests to Consumers That the Products Are Made From Salmon That Are Sourced in Accordance With High Environmental and Animal Welfare Standards.**

31.     Mowi markets and sells the Products throughout the United States, including in New York and Maine.

32.     The retail packaging of the Products features the claim "***Sustainably sourced*** premium quality Atlantic salmon."



33.     Mowi's "sustainably sourced" claim is designed to convey to consumers that the Products are made from salmon that are sourced in accordance with high environmental and animal welfare standards.

34.    The Federal Trade Commission ("FTC") has determined that unqualified general environmental benefit claims such as "sustainable"[11] "likely convey that the product . . . has specific and far-reaching environmental benefits and may convey that the item . . . has no negative environmental impact."[12] For that reason, the FTC has admonished companies not to use unqualified claims such as "sustainable" due to its determination that "it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims."[13]

35.    Research demonstrates that claims such as "sustainably produced" are perceived by many consumers to mean "produced according to higher animal welfare standards."[14]

36.    Consumers have ranked the "minimal use of hormones and drugs," "no pollution of the environment," and "respect of fish welfare" as three of the four most important elements of sustainable aquaculture.[15]

37.    A study on consumer perception of the phrase "ecologically sustainable" found that a majority of consumers "expect eco-labelled seafood to be harvested in a way that reduced impact on the fish population or the marine environment."[16] And, out of 235 responses, only four percent "expressed skepticism about the term ['ecologically sustainable']" and felt that "it was primarily a marketing term without real meaning."[17]

---

[11] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad.
[12] FTC Green Guides, 16 C.F.R. § 260.4(b).
[13] *Id.*
[14] Katrin Zander et al., *Consumers' Willingness to Pay for Sustainable Seafood Made in Europe*, 30 J. Int'l Food & Agribusiness Marketing 251 (Dec. 22, 2017), https://www.tandfonline.com/doi/full/10.1080/08974438.2017.1413611.
[15] *Id*.
[16] Loren McClenachan et al., *Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*, 17 Fish & Fisheries 825 (Sept. 2016), https://onlinelibrary.wiley.com/doi/abs/10.1111/faf.12148.
[17] *Id.*

## II.      The Products Are Made From Salmon Industrially Farmed Using Unsustainable Practices.

38.      Mowi's "sustainably sourced" claim suggests to consumers that the Products are sustainably sourced in accordance with high environmental and animal welfare practices, but in reality, the Products are sourced from salmon industrially farmed using unsustainable practices.

### A.      Mowi's Production Practices Are Environmentally Destructive.

39.      The Products are made from salmon that are sourced from Mowi's industrial fish farms, which include locations in Norway, Scotland, Ireland, the Faroe Islands, Canada, and Chile.[18]

40.      Mowi employs numerous production practices that pose grave risks to the environment.

41.      Mowi uses vast quantities of wild-caught fish as feed for the salmon it raises. Salmon are carnivores and can require up to five pounds of wild fish for every pound of weight they gain.[19] Accordingly, experts have determined that the use of wild fish in aquaculture feed is "unsustainable for ocean ecosystems."[20]

42.      Mowi also uses an ecologically dangerous method of salmon farming known as "open-net pen aquaculture," in which more than 70,000 salmon may be confined in a single "pen."[21] This practice has been banned in numerous jurisdictions due to concerns over environmental risks.[22] Images of some of Mowi's facilities are below.

---

[18] *About*, Ducktrap River of Maine, http://ducktrap.com/about/ (last visited Dec. 29, 2020).

[19] Mark Shwartz, *Stanford study: Half of the fish consumed globally is now raised on farms*, Stanford News (Sept. 8, 2009), https://news.stanford.edu/news/2009/september7/woods-fishfarm-study-090709.html.

[20] Jillian P. Fry et al., *Environmental Health Impacts of Feeding Crops to Farmed Fish*, 91 Env. Int'l 201 (May 2016), https://www.sciencedirect.com/science/article/pii/S0160412016300587.

[21]    *Escape Calls High Energy Salmon Sites Into Question*, The Fish Site (Jan. 20, 2020), https://thefishsite.com/articles/mowi-reports-mass-salmon-escape-from-colonsay.

[22] *See* Lynda V. Mapes, *Fish Farm Objects, But Washington State Says It's Over for Atlantic Salmon Pens at Port Angeles*, Seattle Times (Dec. 19, 2017, 5:29 PM), https://www.seattletimes.com/seattle-news/environment/state-says-



Mowi produces up to 60,000 tonnes of salmon each year in Scotland



decision-to-terminate-port-angeles-atlantic-salmon-farm-is-final ("Atlantic salmon farming in open-water net pens is banned in California and Alaska and not practiced in Oregon."); Ben Fisher, *Washington Governor Jay Inslee Signs Bill Banning Atlantic Salmon Farming*, SeafoodSource (Mar. 23, 2018), https://www.seafoodsource.com/news/aquaculture/washington-governor-jay-inslee-signs-bill-banning-atlantic-salmon-farming; Lynda V. Mapes, *Fish Farm Caused Atlantic Salmon Spill Near San Juans, Then Tried to Hide How Bad It Was, State Says*, Seattle Times (Feb. 2, 2018, 11:23 PM), https://www.seattletimes.com/seattle-news/fish-farm-caused-atlantic-salmon-spill-state-says-then-tried-to-hide-how-bad-it-was/; Craig Medred, *The Failed Ban*, Craig Medred (Oct. 13, 2019), https://craigmedred.news/2019/10/13/the-failed-ban/.

43.     Because open-net pens are directly connected to the broader marine environment (see above), experts have concluded that diseases and escaped salmon may spread from the farms into the environment and that "risks of damage to wild salmon populations, ecosystems, and society are large."[23]

44.     The Monterey Bay Aquarium Seafood Watch ("Seafood Watch") specifically warns consumers to avoid salmon from most of the locations where Mowi operates its salmon farms due to sustainability concerns.[24]

45.     For example, Atlantic salmon farmed in marine net pens in Chile are on the "Avoid" list. As Seafood Watch explains: "The high volume of antibiotics and pesticides that are used to control diseases and sea lice parasites is a critical concern. In addition, the dominant antibiotic treatments, florfenicol and oxytetracycline, are listed as highly important for human medicine by the World Health Organisation. Antibiotics and pesticides are both used, on average, more than two times per production cycle."[25]

46.     Atlantic salmon farmed in marine net pens in Canada's Atlantic, Norway, and Scotland (except the Orkney Islands) are also on the "Avoid" list. As Seafood Watch explains: "The overuse of chemicals is . . . a high concern for [these] other sources. In Norway and Scotland, escapes of farmed salmon are a major risk to the genetic composition and fitness of wild, native salmon populations. . . . [D]isease impacts on wild fish are rated a high concern too."[26]

---

[23] Rosamond Naylor et al., *Fugitive Salmon: Assessing the Risks of Escaped Fish from Net-Pen Aquaculture*, 55 BioScience 427 (May 2005), https://academic.oup.com/bioscience/article/55/5/427/226100.

[24] Norway (Northeast Atlantic Ocean), Canada (Northwest Atlantic Ocean), Chile, and the United Kingdom (other than the Orkney Islands) are all on the "Avoid" list. *Salmon*, Monterey Bay Aquarium Seafood Watch, https://www.seafoodwatch.org/recommendations/search?query=%3Aspecies%3BAtlantic%20salmon%3Amethods%3BMarine%20net%20pen (last visited Dec. 29, 2020).

[25] *Recommendation: Atlantic Salmon, Chile*, Monterey Bay Aquarium Seafood Watch, https://www.seafoodwatch.org/recommendation/salmon/salmon-atlantic-chile--southeast-pacific-ocean-marine-net-pen?species=302 (last visited Dec. 30, 2020).

[26] *Id.*

47.     Ecologically dangerous diseases, chemicals, and escapes associated with open-net pen aquaculture have been repeatedly documented at Mowi facilities.

48.     Within the past two years alone, Mowi has reported numerous dangerous disease outbreaks, including outbreaks of infectious salmon anemia,[27] Pasteurella skyensis, pancreas disease, and cardiomyopathy syndrome.[28] Mowi has also reported major infestations of sea lice.

49.     The crowded and disease-ridden conditions at Mowi facilities cause Mowi to use large amounts of antimicrobial drugs that pose risks to human health and the environment.[29]

50.     Mowi's own audit documents[30] show that it treats its salmon with the antibiotics sulfadimethoxine and florfenicol. Florfenicol is considered "highly important" for human medicine by the WHO.[31]

51.     Antibiotic use in farming contributes to the emergence of antimicrobial resistance in bacteria that may be transferred to humans, "thereby reducing the effectiveness of antibiotic drugs for treating human disease."[32] Over 2.8 million antibiotic-resistant infections occur in the United States each year, killing more than 35,000 people.[33] The CDC has described antibiotic resistance as "one of the greatest global public health challenges of our time,"[34] and the WHO has

---

[27] Dave Edler, *Mowi to cull 450k fish after ISA outbreak*, Fish Farmer (Apr. 29, 2020), https://www.fishfarmermagazine.com/news/mowi-to-cull-450k-fish-after-isa-outbreak/.

[28] *Salmon producer Mowi sees profits hit by lice, disease and escapes*, BBC News (Feb. 12, 2020), https://www.bbc.com/news/uk-scotland-scotland-business-51479880.

[29] Gareth Moore, *Disease outbreak forces spike in Mowi Scotland antibiotics use*, Fish Farming Expert (Feb. 12, 2020), https://www.fishfarmingexpert.com/article/disease-outbreak-forces-spike-in-mowi-scotland-antibiotics-use/.

[30] *See ASC Dashboard*, Mowi, https://mowi.com/sustainability/aquaculture-stewardship-council/asc-dashboard/ (last visited Dec. 30, 2020).

[31] World Health Organization, *Critically Important Antimicrobials for Human Medicine* (2016), https://apps.who.int/iris/bitstream/handle/10665/325036/WHO-NMH-FOS-FZD-19.1-eng.pdf?ua=1 (Florfenicol is in the amphenicols class of antibiotics).

[32] *Antimicrobial Resistance*, U.S. Food & Drug Administration, https://www.fda.gov/animal-veterinary/safety-health/antimicrobial-resistance (last visited Dec. 30, 2020).

[33] Centers for Disease Control, *supra* note 1 at x.

[34] *Id.* at 3.

described it as an "invisible pandemic" that is "one of the most urgent health risks of our time," with the emergence of infections that are untreatable by all classes of antibiotics.[35]

52.    Mowi's audit records also show that its fish are also administered the sedative drug tricaine mesylate.

53.    The records further demonstrate that Mowi's fish are fed synthetic insecticides emamectin benzoate, deltamethrin, and azamethiphos.

54.    Mowi also uses hydrogen peroxide to treat sea lice.[36] Despite its prevalence as a common household cleaning product, hydrogen peroxide is "toxic to aquatic organisms" and the environment, lethal to shrimp and other benthic crustaceans, and actually promotes sea lice resistance.[37]

55.    Mowi has also used chemical disinfectants, including formaldehyde-based formalin (a known carcinogen) and bleach.[38]

56.    Mowi has repeatedly failed to report chemical use and the presence of dangerous pathogens, in violation of the Aquaculture Stewardship Council Standards.[39]

57.    In May 2019, it was revealed that Mowi was under investigation by the Scottish Environment Protection Agency for failing to accurately report widespread use of medications and chemical treatments in its salmon farming operations.[40]

---

[35] World Health Organization, *In the Face of Slow Progress, WHO Offers a New Tool and Sets a Target to Accelerate Action Against Antimicrobial Resistance*, *supra* note 3.

[36] *See ASC Dashboard*, *supra* note 30.

[37] *See* Larry J. Schmidt et al., *Environmental Assessment for the Use of Hydrogen Peroxide in Aquaculture for Treating External Fungal and Bacterial Diseases of Cultured Fish and Fish Eggs*, U.S. Geological Survey (June 8, 2006), https://animaldrugsatfda.fda.gov/adafda/app/search/public/document/downloadEA/123; *GPS Safety Summary, Substance Name: Hydrogen Peroxide*, Arkema (July 15, 2013), https://silo.tips/download/gps-safety-summary-hydrogen-peroxide.

[38] Lucy Adams, *Salmon Farming Giant Mowi Probed Over Chemical Use*, BBC (May 20, 2019), https://www.bbc.com/news/uk-scotland-48334029; Billy Briggs, *Chemical Fears at Scots Fish Farms*, The Times (July 21, 2019), https://www.thetimes.co.uk/article/chemical-fears-at-scots-fish-farms-mlh6smzj6.

[39] *See ASC Dashboard*, *supra* note 30.

[40] Adams, *supra* note 38.

58.     In January 2020, Russia banned salmon from Mowi's facilities in Chile due to the "alleged detection of substances such as crystal violet (a moderate-strength disinfectant also known as gentian violet) and the antibiotic oxytetracycline in fish samples tested" by Russia's veterinary authority.[41]

59.     These salmon raised by Mowi, which may be infected with dangerous pathogens (including antibiotic-resistant infections), can escape into the surrounding ecosystems and put wild fish populations at risk.

60.     For example, in the early 2000s, 100,000 Mowi salmon escaped into the wild near Washington County, Maine.[42] In January 2020, more than 73,000 salmon escaped from a Mowi aquaculture site off of the coast of Scotland following a structural failure, marking the third major Mowi fish escape within 14 months, following an incident in November 2018 when 24,572 salmon escaped and another in October 2019 when 23,970 salmon escaped from Mowi pens into the surrounding environment.[43]

61.     In July 2018, nearly 700,000 salmon escaped from a Mowi facility in Chile, causing "irreparable environmental damage," according to Chile's Superintendency of the Environment (SMA). After a long investigation, SMA fined Mowi a record $6.7 million USD, finding that Mowi failed to maintain appropriate security conditions and cultivation elements of optimal quality and resistance, which resulted in the mass escape.[44]

---

[41] Jonathan Garcés, *Two Chilean Salmon Farmers Allowed Back Into Russia*, Fish Farming Expert (Mar. 9, 2020, 1:05 PM), https://www.fishfarmingexpert.com/article/two-chilean-salmon-farmers-allowed-back-in-russian-market/; Editors, *Russia Bans Mowi Chile Salmon*, Fish Farming Expert (Jan. 31, 2020, 6:04 PM), https://www.fishfarmingexpert.com/article/russia-bans-mowi-chile-salmon/.

[42] Abigail Curtis, *How a Belfast Company Became One of the Nation's Biggest Smoked Salmon Producers*, Bangor Daily News (Oct. 11, 2018), https://bangordailynews.com/2018/10/11/news/midcoast/how-a-belfast-smokehouse-is-turning-salmon-into-a-profitable-delicacy/.

[43] *Escape Calls High Energy Salmon Sites Into Question*, *supra* note 21.

[44] Molinari, *supra* note 10.

62.    In December 2020, Chile's SMA filed charges against Mowi for salmon overproduction, accusing Mowi of "producing 3,800 metric tons more than the amount authorized in its environmental and sector permits." The SMA classified this as a "serious" charge, which could result in Mowi losing its environmental qualification resolution or even the closure of the farm.[45]

63.    In December 2020, Mowi announced that it would lose one third of its salmon farming permits in the Canadian province of British Columbia due to a government decision to end fish farming in the Discovery Islands.[46] The decision to phase out open-net salmon farms in this region was based on concerns that the farms were contributing to the collapse of wild salmon stocks due to sea lice and other pathogen transfer from the farms.[47]

**B.    Mowi's Production Practices Are Inhumane.**

64.    Mowi's standard business practices inflict unnecessary suffering on its salmon and other animals.

65.    The conditions at Mowi facilities in Scotland have been rated by animal charity OneKind as some of the industry's worst due to mortality rates, parasite infestations, stress levels, overstocking, genetic deformities, and escapes, among other factors.[48] Overall, the analysis ranked Mowi as the second-worst out of eight farmed fish producers on animal welfare.

---

[45] *Chilean Authority Files Charges Against Mowi for Alleged Overproduction*, Undercurrent News (Dec. 15, 2020), https://www.undercurrentnews.com/2020/12/15/chilean-authority-files-charges-against-mowi-for-alleged-overproduction/.

[46] *Norway's Mowi Loses Fish Farming Permits in Parts of Canada from 2022*, Yahoo! Finance (Dec. 18, 2020), https://finance.yahoo.com/news/norways-mowi-loses-fish-farming-073349405.html?guccounter=1.

[47] Karin Larsen, *Discovery Islands Salmon Farms to Be Phased Out of Existence Over Next 18 Months*, CBC News (Dec. 17, 2020), https://www.cbc.ca/news/canada/british-columbia/salmon-farms-discovery-islands-closing-1.5845502.

[48] Rob Edwards, *Revealed: The Fish Farms Worst on Animal Welfare*, The Ferret (Aug. 5, 2018), https://theferret.scot/fish-farms-worst-animal-welfare/.

66.     Mowi has been officially reprimanded by the UK's Animal and Plant Health Agency for failing to protect lice-eating fish from "suffering [and] disease" at its salmon farms in Scotland.[49]

67.     Mowi's method of net pen aquaculture leaves the salmon vulnerable to massive "die-off" events from various causes.

68.     For example, between July and September 2019, approximately 737,000 salmon from 12 separate Mowi fish farms in Scotland were killed by algae blooms, poor health, and disease.[50] In May 2020, 1.5 million juvenile salmon died in Mowi's new hatchery in Northern Norway.[51]

69.     The extremely crowded and unsanitary environment that the salmon are raised in is nothing like the natural environment in which the salmon would be raised in the wild.

70.     Scientists characterize the crowded production methods used by companies like Mowi as "stressful high-density conditions" that far exceed what salmon would experience in the wild.[52]

71.     Salmon in these crowded environments become highly aggressive and cause harm to each other as a result.[53]

---

[49] Rob Edwards, *Salmon Farming Firm Under Fire over Fish Welfare After 700,000 Deaths*, The Ferret (Nov. 10, 2019), https://theferret.scot/mowi-fish-farming-deaths/.

[50] *Id.*

[51] Editorial Staff, *1.5 Million Juvenile Salmon Have Died in Mowi's Brand New Hatchery*, SalmonBusiness (May 27, 2020), https://salmonbusiness.com/fish-mortality-in-mowis-new-hatchery/.

[52] Alison C. Harvey, *Does Density Influence Relative Growth Performance of Farm, Wild and F1 Hybrid Atlantic Salmon in Semi-Natural and Hatchery Common Garden Conditions?*, 3 Royal Soc. Open Sci. 1 (July 2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4968464/.

[53] Joacim Näslund et al., *Hatchery Tank Enrichment Affects Cortisol Levels and Shelter-Seeking in Atlantic Salmon (Salmo salar)*, 70 Can. J. Fisheries & Aquatic Sci. 585 (Feb. 2013), https://www.researchgate.net/publication/236155282_Hatchery_tank_enrichment_affects_cortisol_levels_and_shelter-seeking_in_Atlantic_salmon_Salmo_salar.

72.     Mowi's crowded conditions are made more stressful by the fact that the barren tanks provide no environmental variety that would be present in a natural habitat. As a result, there are no opportunities for the fish to seek shelter from each other. Research suggests that fish raised on farms without such enrichments experience significantly higher stress levels and are subjected to more violent aggression from other fish.[54]

73.     Mowi's unsustainable practices not only lead to rampant diseases and health issues for its farmed fishes, but also pose risks to surrounding marine life. The unnaturally high concentration of fish at Mowi facilities also endangers other animals that naturally eat salmon in the wild. Mowi inhumanely kills wild animals that are drawn to its facilities by shooting them to death. Seal shootings at two separate Mowi locations were reported in 2018 alone, and reports of birds stuck in Mowi nets, as well as other "wildlife interactions," have been reported at a number of others.[55]

74.     Thus, Mowi's marketing of the Products—which suggests to consumers that the Products are made from salmon that are sustainably sourced in accordance with high environmental and animal welfare standards—is false, deceptive, and misleading.

## III.    Mowi's "Sustainably Sourced" Claim Is Material and Misleading.

75.     As set forth *supra* in Sections I-II, Mowi's "sustainably sourced" claim—which suggests to consumers that the Products are made from salmon that are sourced in accordance with high environmental and animal welfare standards—is false, deceptive, and misleading.

76.     Mowi's "sustainably sourced" claim is material to consumers.

---

[54] *Id.*

[55] *See ASC Dashboard*, *supra* note 30.

77.     Researchers have found that consumers seek out and are willing to pay significantly more for products labeled as "ecologically sustainable."[56]

78.     This finding is consistent with other research that has found that "consumers are willing to pay to improve animal welfare and reduce undesirable environmental effects from fish farming."[57]

79.     Mowi's labeling and marketing of the Products as "sustainably sourced" deceived and/or was likely to deceive the public. Reasonable consumers have been, and continue to be, deceived into believing that the Products are made from fish that are "sustainably sourced" in accordance with high environmental and animal welfare standards.

80.     Consumers cannot discover the true nature and sourcing of the Products from the Products' packaging. Ordinary consumers do not have sufficient knowledge about the salmon industry to know or ascertain that the Products are made from salmon industrially farmed at Mowi's facilities using unsustainable practices.

81.     Mowi knew that the Products were marketed as "sustainably sourced." Mowi also knew how the Products are sourced and produced. Thus, Mowi knew, or should have known, the facts demonstrating that the Products were falsely and deceptively labeled and marketed.

82.     The production process Mowi uses to make the Products is known only to Mowi and its suppliers and has not been disclosed to Plaintiff or the class of consumers Plaintiff seeks to represent.

83.     Mowi's concealment tolls any applicable statute of limitations.

84.     To this day, Mowi continues to conceal the true nature and sourcing of the Products.

---

[56] McClenachan et al., *supra* note 16.
[57] Ingrid Olesen et al., *Eliciting Consumers' Willingness to Pay for Organic and Welfare-Labelled Salmon in a Non-Hypothetical Choice Experiment*, 127 Livestock Sci. 218 (Feb. 2010), https://pubag.nal.usda.gov/catalog/775401.

85.     In making the false, deceptive, and misleading representations at issue, Mowi also knew and intended that consumers would buy and/or pay more for products marketed as "sustainably sourced," furthering Mowi's interest of increasing its sales and decreasing the sales of competitors whose products are truthfully marketed.

86.     Had Mowi not made the false, deceptive, and misleading representations, Plaintiff and the Class Members would not have been willing to pay the same price for the Products, would have chosen competing products, and/or would not have purchased as much of the Products.

87.     Mowi's ongoing false, deceptive, and misleading labeling and marketing of the Products continues to cause harm to the consumers Plaintiff seeks to represent and will continue to do so if Mowi is not enjoined.

88.     Consumers are at risk of real, immediate, and continuing harm if Mowi continues to sell the Products using false, deceptive, and misleading labeling and marketing.

## CLASS ALLEGATIONS

89.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

90.     This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

91.     The class definition(s) may depend on the information obtained throughout discovery. At this time, Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all other similarly situated individuals within the United States (the "Class" or "Class Members") defined as follows: All consumers who purchased Mowi's Products (as defined herein) in the United States within the applicable statute of limitations and until the date of class certification (the "Class Period").

92.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Products (as defined herein) within the State of New York during the Class Period (the "New York Subclass").

93.     Excluded from the Class are: (1) Defendants, any entity or division in which a Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors, and (2) the judge to whom this case is assigned and the judge's staff.

94.     Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

95.     Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

96.     All members of the Class and New York Subclass were and are similarly affected by the false, deceptive, and misleading labeling and marketing of Mowi's Products, and the relief sought herein is for the benefit of Plaintiff and Class Members.

**1.      Numerosity**

97.     At this time, Plaintiff does not know the exact number of Class Members. Based on the wide distribution of Mowi's Products, Plaintiff believes that the Class comprises thousands of consumers. The number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, Internet postings, and/or published notice.

**2.      Commonality**

98.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class Members include:

(a) Whether Mowi is responsible for the labeling and marketing at issue;

(b) Whether the labeling and marketing of the Products was false, deceptive, misleading, unfair, fraudulent, and/or unlawful;

(c) Whether Mowi breached a warranty created through the marketing and advertising of the Products; and

(d) Whether Mowi's conduct, as set forth above, injured and may continue to injure Plaintiff and Class Members.

### 3.    Typicality

99.    Plaintiff's claims are typical of those of the Class, as the claims arise from the same course of conduct by Mowi, and the relief sought within the Class is common to the Class Members. Plaintiff, like all Class Members, relied on Mowi's false and deceptive representations and purchased the Products, purchased more of the Products, and/or paid more for the Products when she otherwise would not have, had the Products been truthfully marketed and advertised, thereby sustaining injury from Mowi's wrongful conduct. Further, there are no defenses available to Mowi that are unique to Plaintiff.

### 4.    Adequacy

100.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, and Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the Class Members. Undersigned counsel have represented consumers in a variety of actions seeking to protect consumers from false, deceptive, and misleading business practices.

### 5.    Predominance and Superiority of Class Action

101.    The prerequisites to maintain a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

102.    Individual joinder of the Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. Each Class Member has been damaged and is entitled to recovery as a result of the violations alleged herein.

103.    Moreover, because the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

104.    Plaintiff is unaware of any difficulties in managing this case that would preclude proceeding as a class action.

### 6.    Declaratory and Injunctive Relief

105.    Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Mowi acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the injunctive relief sought on behalf of the Class.

106.    Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION

### Count I

**Violation of New York General Business Law § 349**
**(On Behalf of the New York Subclass)**

107.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

108.   New York General Business Law ("NYGBL") § 349(a) provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

109.   As set forth *supra* in Sections I-III, Mowi's "sustainably sourced" claim—which suggests to consumers that the Products are sustainably sourced in accordance with high environmental and animal welfare standards—is materially false, deceptive, and misleading. The Products marketed with the phrase "sustainably sourced" are, in fact, made from salmon industrially farmed at Mowi's facilities using unsustainable practices that are environmentally destructive and inhumane.

110.   Mowi made the false, deceptive, and misleading "sustainably sourced" claim willfully, wantonly, and/or with reckless disregard for the truth.

111.   Plaintiff and the New York Subclass are consumers who purchased the Products in New York.

112.   Mowi's "sustainably sourced" claim induced Plaintiff and the New York Subclass to purchase, purchase more of, and/or pay a higher price for the Products when they otherwise would not have. As a result, Plaintiff and the New York Subclass have been injured by their purchase of the Products, which were worth less than what they bargained for and/or paid, and which they selected over other products that may have been truthfully marketed.

113.    Thus, Mowi has violated, and continues to violate, NYGBL § 349. As a direct and proximate result of Mowi's violation of § 349, Plaintiff and the New York Subclass have suffered damages in an amount to be determined at trial.

114.    For the foregoing reasons, Mowi is liable to Plaintiff and the New York Subclass for actual damages or $50 for each sale of a Product (whichever is greater), attorneys' fees, and the costs of this suit. The Court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $1,000, based on Mowi's willful and knowing violation of § 349.

115.    In addition, Mowi continues to engage in the deceptive conduct and, upon information and belief, will keep doing so unless enjoined by this Court. Members of the New York Subclass that Plaintiff seeks to represent are purchasing, and will continue to purchase, the deceptively marketed Products. Thus, the false, deceptive, and misleading practices of Mowi, as described above, present an ongoing and serious threat to Plaintiff and the New York Subclass.

116.    Plaintiff and the New York Subclass seek preliminary and permanent injunctive relief against Mowi's deceptive marketing of the Products.

117.    Pursuant to NYGBL § 349(h), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Mowi from continuing to engage in the deceptive marketing of the Products as alleged herein.

118.    Plaintiff and the New York Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## Count II

### Violation of New York General Business Law § 350
### (On Behalf of the New York Subclass)

119.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

120.    NYGBL § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." Section 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

121.    As set forth *supra* in Sections I-III, Mowi's "sustainably sourced" claim is materially false, deceptive, and misleading, and thus constitutes false advertising within the meaning of § 350.

122.    Mowi made the false, deceptive, and misleading "sustainably sourced" claim willfully, wantonly, and/or with reckless disregard for the truth.

123.    Plaintiff and the New York Subclass are consumers who purchased the Products in New York.

124.    Mowi's "sustainably sourced" claim induced Plaintiff and the New York Subclass to purchase, purchase more of, and/or pay a higher price for the Products when they otherwise would not have. As a result, Plaintiff and the New York Subclass have been injured by their purchase of the Products, which were worth less than what they bargained for and/or paid, and which they selected over other products that may have been truthfully marketed.

125.    Thus, Mowi has violated, and continues to violate, NYGBL § 350. As a direct and proximate result of Mowi's violation of § 350, Plaintiff and the New York Subclass have suffered damages in an amount to be determined at trial.

126.     For the foregoing reasons, Mowi is liable to Plaintiff and the New York Subclass for actual damages or $500 for each sale of a Product (whichever is greater), attorneys' fees, and the costs of this suit. The Court may, in its discretion, increase the award of damages to an amount up to three times the actual damages, up to $10,000, based on Mowi's willful and knowing violation of § 350.

127.     In addition, Mowi continues to engage in the deceptive conduct and, upon information and belief, will keep doing so unless enjoined by this Court. Members of the New York Subclass that Plaintiff seeks to represent are purchasing, and will continue to purchase, the deceptively marketed Products. Thus, Mowi's false advertising, as described above, presents an ongoing and serious threat to Plaintiff and the New York Subclass.

128.     Plaintiff and the New York Subclass seek preliminary and permanent injunctive relief against Mowi's false advertising of the Products.

129.     Pursuant to NYGBL § 350-e(3), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Mowi from continuing to engage in false advertising of the Products as alleged herein.

130.     Plaintiff and the New York Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### Count III

**Violation of State Consumer Protection Statutes**
**(On Behalf of All Class Members)**

131.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

132.     As set forth *supra* in Sections I-III, Mowi's "sustainably sourced" claim is materially false, deceptive, and misleading.

133.    Mowi's false, deceptive, misleading, unfair, and fraudulent practices in labeling, advertising, and marketing the Products, as set forth in this Complaint, violate each of the following state consumer protection statutes to the extent that the Products have been marketed and purchased by Class Members in the respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code §§ 4-88-107(a), (a)(10); Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat. § 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); D.C. Code §§ 28-3904(e), (f); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. §§ 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law §§ 13-301(1), (3); § 13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. §§ 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code §§ 17.46(b)(2), (3), (5), (7), (24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code § 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

134.     Mowi violated these statutes by falsely and deceptively labeling and advertising the Products as "sustainably sourced" when the Products are made from salmon industrially farmed using unsustainable practices that are environmentally destructive and inhumane.

135.     At all material times, Mowi engaged in a scheme of offering the Products for sale to Plaintiff and other Class Members through, *inter alia*, commercial marketing and advertising, the Internet, the Products' packaging and labeling, and other promotional materials and offers for sale for the Products. The conduct was undertaken by Mowi in transactions intended to result in, and which did result in, the sale of goods to consumers.

136.     As more fully described above, Mowi's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers. Indeed, Plaintiff and the other Class Members were unquestionably deceived by the "sustainably sourced" label on the Products, as Mowi's marketing, advertising, packaging, and labeling of the Products misrepresent, omit, and/or obfuscate the true facts concerning the benefits, nature, and quality of the Products.

137.     Mowi knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive. Mowi acted willfully, wantonly, and with reckless disregard for the truth.

138.     Plaintiff and other Class Members are consumers who purchased the Products for personal, family, or household purposes.

139.     Mowi's deceptive labeling was material to Plaintiff's and other Class member's decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

140.   Mowi's promotional materials were intended as inducements to purchase the Products and are statements disseminated by Mowi to Plaintiff and other Class Members that were intended to reach them.

141.   As a direct and proximate result of Mowi's violations, Plaintiff and the Class have suffered damages in an amount to be determined at trial.

142.   Plaintiff and other Class Members have suffered injury in fact and have lost money or property as a result of these violations because they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

143.   Plaintiff and other Class Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Mowi's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

144.   Plaintiff and other Class Members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

145.   There is no benefit to consumers or competition from deceptively marketing and labeling products like the Products, which are labeled with the claim "sustainably sourced" when this unqualified claim is false.

146.   The gravity of the consequences of Mowi's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and other Class Members.

147.    Mowi's conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of these state consumer protection statutes.

148.    The misrepresentations and nondisclosures by Mowi of the material facts detailed above constitute false and misleading advertising within the meaning of these statutes.

149.    As a result of the foregoing violations, Mowi has violated the proscription against unlawful, fraudulent, and unfair conduct.

150.    Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages, treble damages, attorneys' fees and costs, and any appropriate injunctive and declaratory relief.

151.    Plaintiff and Class Members seek an order of this Court that includes, but is not limited to, requiring Mowi to:

     a.   Provide restitution to Plaintiff and other Class Members;

     b.   Disgorge all revenues obtained as a result of violations of these statutes;

     c.   Cease its unlawful and deceptive acts, and;

     d.   Pay the attorneys' fees and costs of Plaintiff and the Class.

### Count IV

**Breach of Express Warranty**
**(On Behalf of All Class Members)**

152.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

153.    Mowi provided Plaintiff and Class Members with a written, express warranty that the Products were "sustainably sourced."

154.    These affirmations of fact or promises by Mowi relate to the goods and became part of the basis of the bargain.

155.    Plaintiff and Class Members purchased the Products believing them to conform to the express warranties.

156.    Mowi breached these warranties, resulting in damages to Plaintiff and Class Members, who purchased the Products but did not receive the goods as warranted.

157.    As a proximate result of the breach of warranties by Mowi, Plaintiff and the Class Members did not receive goods as warranted. Moreover, had Plaintiff and the Class Members known the true nature and sourcing of the Products, they would not have purchased the Products, would have purchased the Products on different terms, or would have purchased less of the Products.

158.    Thus, Plaintiff and the Class Members have been injured and have suffered damages in an amount to be determined at trial.

## Count V
### Unjust Enrichment
### (In the Alternative, On Behalf of All Class Members)

159.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

160.    As the intended, direct, and proximate result of Mowi's conduct, Mowi has been unjustly enriched through sales of the Products at the expense of Plaintiff and the Class.

161.    Under these circumstances, it would be against equity and good conscience to permit Mowi to retain the ill-gotten benefits that it received from Plaintiff and the Class Members, in light of the fact that the Products they purchased were not what Mowi represented them to be.

## PRAYER FOR RELIEF

*Wherefore*, Plaintiff demands judgment on behalf of herself and the proposed Class providing such relief as follows:

a.      Certification of the Class and New York Subclass proposed herein under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff Abigail Starr as representative of the Class and New York Subclass; and appointment of undersigned counsel as counsel for the Class and New York Subclass;

b.      A declaration that Mowi is financially responsible for notifying Class Members of the pendency of this suit;

c.      An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Mowi as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

d.      An order declaring Mowi's deceptive marketing of the Products to be in violation of NYGBL §§ 349 and 350 and other applicable law, and enjoining Mowi from continuing to deceptively market the Products;

e.      Restitution, disgorgement, refund, and/or other monetary damages, including treble damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

f.      Statutory or actual damages pursuant to NYGBL §§ 349 and 350 and other applicable statutes, and treble damages pursuant to NYBGL §§ 349 and 350 and other applicable statutes;

g.      Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

h.      Awarding to Plaintiff and Class Members reasonable attorneys' fees and costs as allowed by law; and

i.      Such further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

162.    Plaintiff hereby demands a trial by jury.

DATED: December 31, 2020

**PETRUCELLI, MARTIN & HADDOW LLP**

BY:  _/s/ James B. Haddow_____

James B. Haddow (Maine Bar No. 003340)
Two Monument Square, Suite 900
Post Office Box 17555
Portland, Maine 04112-8555
(207) 775-0200 (phone)
(207) 775-2360 (fax)
jhaddow@pmhlegal.com

**RICHMAN LAW AND POLICY**

BY:  _/s/ Kim E. Richman_____

Kim Richman (*pro hac vice* forthcoming)
Jay Shooster (*pro hac vice* forthcoming)
Margaret Sun (*pro hac vice* forthcoming)
1 Bridge Street, Suite 83
Irvington, NY 10533
(718) 705-4579 (phone)
(718) 228-8522 (fax)
krichman@richmanlawpolicy.com
jshooster@richmanlawpolicy.com
msun@richmanlawpolicy.com

*Counsel for Plaintiff Starr and Proposed Class*